# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **DIONTAY DEREL MILINER,** ) | |
| ) | |
| **Plaintiff,** ) | Civil Action Number |
| v. ) | **5:20-cv-01734-AKK** |
| ) | |
| **KILOLO KIJAKAZI, Acting** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Diontay Derel Miliner brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act seeking review of the final adverse decision of the Commissioner of the Social Security Administration. Doc. 1. The court finds that the Administrative Law Judge applied the correct legal standard and that his decision, which has become that of the Commissioner, is supported by substantial evidence. The court therefore affirms the decision denying benefits.

## I.

Miliner applied for supplemental social security benefits in May 2018 based on borderline intellectual functioning, attention deficit hyperactivity disorder, and pain due to past gunshot wounds and stabbings. R. 85-86, 239-240. Miliner's claim was denied, R. 85-98, and he appealed and requested a hearing before an administrative law judge, R. 110-112. After the hearing, the ALJ issued a decision

denying benefits. R. 16-35. Miliner appealed this decision, R. 8-9, but the appeals council denied his request for review, rendering the ALJ's decision the final decision of the Commissioner, R. 1-4. Miliner then filed this petition for judicial review. Doc. 1.

## II.

This court's review is limited to determining whether the record contains substantial evidence to sustain the ALJ's decision and whether the ALJ applied the correct legal standards. 42 U.S.C. § 405(g); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Commissioner's conclusions of law receive de novo review. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). But under 42 U.S.C. §§ 405(g) and 1383(c), the Commissioner's "factual findings are conclusive if supported by 'substantial evidence,'" so the court cannot reconsider the facts, reevaluate the evidence, or substitute its judgment for the Commissioner's. *Id.* Instead, the court must review the final decision in its entirety to determine whether the factual determinations are "reasonable and supported by substantial evidence." *Id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence refers to "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. As the Supreme Court has emphasized, "the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Rather, substantial evidence falls

somewhere between a "scintilla" and a "preponderance of evidence." *Martin*, 894 F.2d at 1529. If substantial evidence supports the Commissioner's factual findings, then the court must affirm, even if the evidence preponderates against those findings. *See id.* However, this limited scope of judicial review "does not yield automatic affirmance," *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988), and reviewing courts are not to act as mere "automatons[,]" *Bloodsworth*, 703 F.2d at 1239 (internal quotations omitted).

### III.

To qualify for supplemental social security benefits under the Social Security Act, a claimant must show that "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant's physical or mental impairments only qualify him for disability benefits if they "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B).

In evaluating eligibility for supplemental social security under the Act, the ALJ must conduct a five-step analysis:

> At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. Where . . . the ALJ finds that the claimant's severe impairments do not meet or equal a listed impairment, the ALJ must then determine, at step four, whether [he] has the residual functional capacity ("RFC") to perform [his] past relevant work. . . . Finally, if the claimant cannot perform [his] past relevant work, the ALJ must then determine, at step five, whether the claimant's RFC permits [him] to perform other work that exists in the national economy.

*Adams v. Comm'r, Soc. Sec. Admin.,* 586 F. App'x 531, 533 (11th Cir. 2014) (internal citations omitted); *see also* 20 C.F.R. § 416.920(a). "The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments," *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also* 20 C.F.R. § 416.920(e), and at step five, the ALJ must consider the claimant's RFC, along with his age, education, and work experience, to determine whether there are a significant number of jobs in the national economy that the claimant could perform, 20 C.F.R. § 416.920(g); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). If the ALJ determines that the claimant, despite any impairments, could adjust to other work in the national economy, the ALJ will issue a finding of not disabled. 20 C.F.R. § 416.920(g).

## IV.

In performing the five-step sequential analysis, the ALJ determined at step one that Miliner had not engaged in substantial gainful activity since the date of his

application. R. 18. At step two, the ALJ found that Miliner's neurodevelopmental disorders and human immunodeficiency disorder qualified as severe impairments, but he found that Miliner's alcohol use, cannabis use, and cocaine use disorders were not contributing factors material to the determination of disability. R. 18-19.

The ALJ then found at step three that Miliner's severe impairments, considered both singly and in combination, did not meet or medically equal a listed impairment. R. 19-24. In making this finding, the ALJ determined that Miliner's mental impairments did not result in an extreme limitation or two marked limitations in a broad area of functioning, as required by the listed criteria for both intellectual disorders and neurodevelopmental disorders. R. 20-24; *see* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, §§ 12.05, 12.11. Specifically, the ALJ found that Miliner only showed "a 'moderate' restriction[] of the ability to understand, remember, or apply information, a 'moderate' restriction in the ability to concentrate, persist, or maintain pace[,] a 'moderate' limitation in the ability to adapt or manage oneself, . . . [and] a 'mild' restriction in his ability to interact with others." R. 20.

Moving to step four, the ALJ determined that Miliner had the "residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Miliner] can understand, remember, and carryout (sic) short simple instructions and can concentrate and remain on task for two-hour periods across an eight-hour workday, five-day workweek with all

customary work breaks." R. 24. The ALJ also found that "[a]ny changes in the work environment should be infrequent," and that Miliner "is functionally illiterate." R. 24. After finding that Miliner had no relevant past work, the ALJ moved to step five and, based on testimony from a vocational expert, determined that "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." R. 34. The ALJ thus issued a finding of "not disabled" and denied Miliner's application for supplemental social security benefits. R. 34-35.

## V.

Miliner contends that the ALJ (1) failed to accord proper weight to the reports of two psychologists who evaluated Miliner, and (2) consequently failed to pose a proper hypothetical to the vocational expert. *See* doc. 16. The court addresses each argument in turn.

### A.

Miliner alleges that substantial evidence does not support the ALJ's decision to reject or discount the opinions of psychologists Jon Rogers and Erin Smith and that the ALJ should have given these reports more weight. The court disagrees.

#### 1.

Dr. Rogers evaluated Miliner at the request of a counselor with Alabama's Vocational Rehabilitation Service. R. 27, 511-520. In his evaluation, Dr. Rogers

6

found that Miliner "does not read or make change with sufficient accuracy for trade level activities," and that "[i]t is questionable whether he could be consistently cooperative with peers and supervision or maintain a routine work cycle." R. 518. In the "recommendations and vocational considerations" portion of his report, Dr. Rogers wrote that "it is questionable whether [Miliner] could be considered a feasible rehabilitation candidate at the present time" and that "the rehabilitation would involve mental health services in a workshop program." R. 519.

The ALJ found that Dr. Rogers's examination was "probative but not entirely persuasive, as it is inconsistent with other report (sic) noted throughout this decision." R. 27. Specifically, the ALJ determined that Dr. Rogers's report "contain[ed] several instances of embellishment as to [Miliner's] conditions" and that "portions of Dr. Rogers['s] opinions are conclusory and speculative." R. 27. And while the ALJ found Dr. Rogers's opinions on Miliner's capacity to work in a workshop setting probative, he noted that such issues are reserved for the Commissioner. R. 27.[1]

Miliner argues that: (1) Dr. Rogers's opinions were not reserved for the Commissioner since "Dr. Rogers does not state that [Miliner] cannot work but rather

---

[1] *See* 20 C.F.R. § 416.920b ("Statements that you are or are not disabled, blind, able to work, or able to perform regular or continuing work, [s]tatements about whether or not you have a severe impairment(s), . . . [and] [s]tatements about whether or not your impairment(s) meets or medically equals any listing" are "[s]tatements on issues reserved to the Commissioner" and are thus "inherently neither valuable nor persuasive.")

7

that he would need to be in a 'workshop' program;" (2) "[t]he ALJ does not state specifically what reports that he finds contradict the findings of Dr. Rogers;" (3) "the ALJ's rejection of the opinion of Dr. Rogers is contrary to the requirements of [the Act] as Dr. Rogers's opinion should have been given more weight, not less," due to his specialized education; and (4) substantial evidence does not support the ALJ's findings that Dr. Rogers's report contained embellishments and was speculative and conclusory. Doc. 16 at 13-20. Essentially, Miliner contends that the ALJ was required to give more deference to Dr. Rogers's evaluation. *Id*.

Under the relevant portions of the Act, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a). Instead, supportability – whether objective medical evidence and supporting explanations presented by a medical source support his findings – and consistency – whether a medical opinion or finding is consistent with evidence from other medical and nonmedical sources in the claim – "are the most important factors [the ALJ] consider[s]" when determining the persuasiveness of a medical source's opinion. *Id*. § 416.920c(b-c). The ALJ "will explain how [he] considered the supportability and consistency factors for a medical source's medical opinions" in the final determination of disability, but the ALJ is not required to articulate how he considered any other factors. *Id*. Although the

ALJ is "required to state with particularity the weight he gives to different medical opinions and the reasons why," the ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418-19 (11th Cir. 2006) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir.1987); *Bloodsworth*, 703 F.2d at 1240. And, notably, "a one-time examining psychologist's opinion '[is] not entitled to great weight." *Sober v. Comm'r, Soc. Sec. Admin.*, 841 F. App'x 109, 112 (11th Cir. 2020) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004)).

Here, the ALJ discussed Dr. Rogers's findings in detail, before stating that the report was "probative but not entirely persuasive." R. 27. In reaching this determination, the ALJ noted that some of Dr. Rogers's findings were "conclusory and speculative" – i.e., not entirely supported by the evidence and supporting explanations – and the report was "inconsistent with other report[s] noted throughout this decision." R. 27. Though the ALJ did not explicitly state which other reports he was referring to, his decision makes clear that he relied more heavily on the findings of Dr. Eugene Fleece, treatment records from Family Services Center, and a third-party function report from Craig Walter. *See* R. 26-33. The ALJ explained his reasons for giving more weight to these opinions and evidence in other portions of his decision, and he was not required to restate these reasons in the particular section of his decision finding Dr. Rogers's report unpersuasive. The ALJ was also

9

not required to explain why he did or did not place more weight on Dr. Rogers's evaluation due to his specialized medical training. *See* 20 C.F.R. § 416.920c(b-c). Other evidence in this case, including some portions of Dr. Rogers's evaluation, provided substantial evidence to support the ALJ's decision to reject certain parts of Dr. Rogers's opinion about Miliner's impairments and his capacity to work. Therefore, the ALJ did not commit reversible error.

2.

Miliner primarily raises similar contentions regarding Dr. Smith. A state disability specialist sent Miliner to Dr. Smith for a psychological examination, R. 28, 461-465, and Dr. Smith found that Miliner's "ability to understand, to carry out and remember instructions, and to respond appropriately to supervision, coworkers and work pressures in a work setting is severely impaired," R. 463. She also found that Miliner "has difficulty maintaining and shifting attention and concentration, distractibility, difficulty following instructions, difficulty initiating and completing tasks, poor organization, forgetfulness, impulsivity of behaviors and emotions, has poor social skills and poor impulse control." R. 464. As a result, Dr. Smith opined that Miliner's "ability to maintain gainful full-time employment, based upon cognitive or mental health issues, is severely impaired due to limited intellectual functioning" and that "[h]e will require a sheltered setting with constant supervision." R. 465.

The ALJ discussed Dr. Smith's report at length, *see* R. 28-30, and found that Dr. Smith's determination that Miliner was "severely impaired" was "conclusory and uncertain" and was not fully supported by the evidence that Dr. Smith relied on in her report. R. 29. The ALJ also compared Dr. Smith's findings to medical records from Family Services Center, R. 474-505, 521-561, and found that Dr. Smith's opinions were "inconsistent with treating therapists and doctors," R. 28-30. Based on these factors, the ALJ found "the opinions of Dr. Smith probative, but not persuasive." R. 30.

a.

Miliner argues that "the findings and opinions of Dr. Smith should be given more weight because of her specialization, but the ALJ in this matter did not do so and gave no explanation as to why he did not give more weight due to [her] specialization." Doc. 16 at 20. Miliner claims that Dr. Smith's findings should have led the ALJ to conclude (1) at step three that Miliner suffered from marked or extreme limitations sufficient to render a finding of disabled, and (2) at steps four and five that Miliner was unable to perform substantial gainful activity. *Id*. at 25-30. And Miliner adds that the ALJ should have found Dr. Smith's report more persuasive because it was consistent with Dr. Rogers's findings and recommendations, citing in support 20 C.F.R. § 416.902, which explains that licensed psychologists are acceptable medical sources. *Id*. at 23-24. But again, the

11

ALJ was not required to defer completely to Dr. Smith's assessment, even though some portions of it were consistent with Dr. Rogers's report. *See* 20 C.F.R. § 416.920c. And "[t]he ALJ correctly found that, because [the consulting psychologist] examined [Miliner] on only one occasion, her opinion was not entitled to great weight." *Crawford*, 363 F.3d at 1160. Therefore, the ALJ did not commit reversible error by not specifically describing how Dr. Smith's specialization affected his weighing of her findings.

b.

Miliner also argues that the ALJ erred by failing to afford due weight to the results of a mental status examination that Dr. Smith performed. Doc. 16 at 21-23, 33-34. Miliner correctly notes that an examination or clinical interview is one type of medical evidence that the ALJ should consider. *See* doc. 16 at 21-22; 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(C)(2). Miliner overlooks, however, that the ALJ is not bound by the psychologist's findings and is still free to weigh the results of the testing against other relevant evidence. *See* 20 C.F.R. § 416.920c(b-c). Here, the ALJ considered the results of Dr. Smith's testing, but found the resulting opinion not well supported by the evidence and inconsistent with other medical and nonmedical sources. R. 29. There is substantial evidence in the record to support this decision, such as treatment records from Family Services Center, R. 474-505, 521-561, Dr. Eugene Fleece's medical evaluation, R. 32-33, 92-93, and Craig

Walter's third-party function report, R. 247-254. Therefore, the ALJ properly discounted the results of Dr. Smith's mental status examination in making his final determination.

c.

Miliner further contends that the ALJ erred by citing 20 C.F.R. §§ 404.1527(e) and 416.927(c) in rejecting portions of Dr. Smith's opinion. Doc. 16 at 24-25. Miliner is correct that these regulations do not apply to Miliner's application, which he filed after March 27, 2017. *See* 20 C.F.R. §§ 404.1527, 416.927. But the newer regulations that do apply, 20 C.F.R. §§ 404.1520c and 416.920c, direct the ALJ to give even less deference to medical opinions than the regulations cited by the ALJ in his decision.[2] Thus, the ALJ's error in citing the incorrect regulations was harmless and immaterial to the final determination of disability, and is thus not grounds for reversal.

d.

Finally, Miliner argues that the ALJ erred by concluding that Dr. Smith's findings were "inconsistent with [his] treating therapist and doctors." Doc. 16 at 30-

---

[2] *Compare* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.") *with* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.")

13

33. Miliner claims that portions of treatment records from Thrive Alabama and Family Service Center were consistent with the opinions of Dr. Smith, and that the ALJ's decision to discount Dr. Smith's evaluation was therefore not supported by substantial evidence. *Id.* Again, the ALJ referenced these specific treatment records in his decision, R. 19-22, 28-32, and found that the medical evidence, as a whole, showed that Miliner was not disabled under the Act, R. 34. Although Miliner may disagree with the ALJ's evaluation of the relevant evidence, the court is not permitted to reweigh the evidence. *Martin*, 894 F.2d at 1529. And even if the evidence preponderates against the ALJ's factual findings, the court must affirm those findings if they are supported by substantial evidence. *Id.* Here, in determining that Miliner was not disabled, the ALJ relied on "such relevant evidence as a reasonable person would accept as adequate to support a conclusion," *id.* (quoting *Bloodsworth*, 703 F.2d at 1239), and therefore did not commit reversible error.

## B.

Miliner also contends that the ALJ's "hypothetical to the vocational expert [did not] include any limitations based on the processing speed limitations or [Miliner's] working memory as to how to perform work activity without constant or frequent supervision." Doc. 16 at 18. To support this point, Miliner correctly notes that "[w]hen the vocational expert was presented with the functional limitations of

14

[Miliner] as stated in the opinion of Dr. Rogers [and Dr. Smith], she testified that there would be no jobs in the regional or national economy that such a person could perform at the substantial gainful activity level." *Id*. at 7-8; *see* R. 71-72. As noted above, however, the ALJ was not required to adopt the opinions of Dr. Rogers and Dr. Smith in determining Miliner's level of impairment and residual functional capacity, *see* 20 C.F.R. § 416.920c(b-c), and was therefore not required to include their opinions in his hypothetical to the vocational expert.

Here, the ALJ posed a hypothetical that adequately incorporated his determinations about Miliner's level of impairment and residual functional capacity, which, for the reasons described above, were supported by substantial evidence. Specifically, the ALJ found that Miliner had "a 'moderate' restriction[] of the ability to understand, remember, or apply information, a 'moderate' restriction in the ability to concentrate, persist, or maintain pace[,] a 'moderate' limitation in the ability to adapt or manage oneself, . . . [and] a 'mild' restriction in his ability to interact with others." R. 20. The ALJ then accounted for these limitations in his hypothetical: "The hypothetical individual can understand, remember and carry out short, simple instructions. Hypothetical individual can concentrate, remain on task for two hour periods across an eight hour work day, five day work week with all customary work

breaks. Any changes in the work environment should be infrequent." R. 70.[3] Though remand may be warranted where "the ALJ asked the vocational expert a hypothetical question that failed to include or otherwise implicitly account for all of [the claimant's] impairments," *Winschel*, 631 F.3d at 1181, here, the ALJ posed a hypothetical that fully accounted for Miliner's impairments. The ALJ thus properly relied on the vocational expert's testimony to find that Miliner could perform other work, and therefore did not commit reversible error.

## VI.

In conclusion, substantial evidence supports the ALJ's decision that Miliner is not disabled, and the ALJ considered the relevant evidence and applied the proper legal standards in reaching that determination. The Commissioner's final decision is therefore due to be affirmed in a separate order in accordance with this Memorandum Opinion.

**DONE** the 21st day of October, 2021.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

[3] The ALJ also later amended his hypothetical to include Miliner's functional illiteracy, and the vocational expert reaffirmed that Miliner could perform substantial gainful employment despite these limitations. R. 72.